FILED BY \_\_\_\_LS\_\_\_\_ D.C.

Aug 28, 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 23-MC-23293-Sanchez

IN THE MATTER OF

THE EXTRADITION OF

JOSÉ WLADIMIR SANDOVAL SEQUERA,

Defendant.

## COMPLAINT FOR PROVISIONAL ARREST WITH A VIEW TOWARDS EXTRADITION
(18 U.S.C. § 3184)

I, the undersigned Assistant United States Attorney, being duly sworn, state on information and belief that the following is true and correct:

1. In this matter, I represent the United States in fulfilling its treaty obligation to the United Mexican States ("Mexico").

2. There is an extradition treaty in force between the United States and Mexico: Extradition Treaty Between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 31 U.S.T. 5059, *as amended by* the Protocol to the Extradition Treaty Between the United States of America and the United Mexican States of May 4, 1978, U.S.-Mex., Nov. 13, 1997, S. Treaty Doc. No. 105-46 (1998) (collectively referenced hereafter as the "Treaty").

3. The Treaty provides in Article 11 for the provisional arrest and detention of alleged fugitives pending the submission of a formal request for extradition and supporting documents.

4.     In accordance with Article 11 of the Treaty, the Government of Mexico has asked the United States for the provisional arrest of José Wladimir Sandoval Sequera ("Sandoval Sequera") with a view towards his extradition.

5.     According to the information provided by the Government of Mexico, Sandoval Sequera has been charged with two offenses: (1) human trafficking, in violation of Article 10, Paragraph 1, Section III of the General Law to Prevent, Punish and Eradicate the Crimes Related to Human Trafficking and Protect and Assist the Victims of these Crimes; and (2) organized sexual exploitation, in violation of Article 13, Section IV of the General Law to Prevent, Punish and Eradicate the Crimes Related to Human Trafficking and Protect and Assist the Victims of these Crimes.

6.     These offenses were committed in Mexico. A warrant for Sandoval Sequera's arrest was issued on January 15, 2022, by a District Judge at the Federal Criminal Justice Center in Reclusorio Oriente, Mexico City, Mexico.

7.     Mexico seeks Sandoval Sequera's provisional arrest because he is accused of human trafficking and organized sexual exploitation that occurred between January and May 2020 in Mexico. On an unknown date in 2020, Mexico's Ministry of the Interior received an anonymous report from a woman claiming that she was the ongoing victim of human trafficking and sexual exploitation. On May 18 and 20, 2022, Mexican authorities interviewed four of the victims, M.E.V.C, E.C.A.R., D.A.H.M., and Y.C.B.C. (collectively, the "victims"), who claimed that they were subjected to human trafficking and forced participation in an organized prostitution ring. The victims provided consistent information on the general structure and operation of the human trafficking scheme. Based on the information the victims provided,

2

Mexican authorities began an investigation, and according to reports provided by the Mexican government, the investigation revealed the following facts in support of the warrant:

    a.     The fugitive, Sandoval Sequera, along with his partner, Arianny Paola Vega Escalona, and his sister, Yubisay Delimar Sandoval Sequera (collectively, the "co-conspirators"), operated an organization under the auspices of an escort agency to transport foreign women to Mexico to sexually exploit them.

    b.     The co-conspirators targeted the victims either on social media directly or by using intermediaries who put the victims in contact with the co-conspirators. In each case, the co-conspirators told the victims that if they traveled to Mexico to work as an escort and had sexual relations with clients, they would make good money. The co-conspirators told the victims that the supposed escort agency would pay for their flights to Mexico and their living expenses upon their arrival in Mexico. The victims were told they would need to work for the co-conspirators until they had paid off the debt incurred from traveling from Venezuela to Mexico, the cost of lodging, food, and beauty expenses associated with the agency's work. However, the victims were assured that they would be well compensated and would quickly repay the debt. Two of the victims, E.C.A.R and D.A.H.M., reported that they agreed to travel to Mexico to work for the co-conspirators because of their financial difficulties in Venezuela and because they believed it would allow them to send money to their families in Venezuela.

c. Upon their arrival in Mexico, Sandoval Sequera met M.E.V.C., E.C.A.R., and D.A.H.M. at the airport and transported them to an apartment, where the co-conspirators took away the victims' identity documents, preventing them from escaping and putting them in fear of being reported to immigration authorities.[1] D.A.H.M. reported that Sandoval Sequera told her that she could not "say anything about what happened, or her family would be in trouble." The co-conspirators also threatened the victims that they would harm their relatives and the victims could be deported from Mexico back to Venezuela if they attempted to escape. The victims were also forced to record a video in which they showed their passports and stated that they were not victims of human trafficking.

d. The co-conspirators paid for the victims' shoes and clothes, as well as beauty care in order to take professional pictures. These pictures were published as part of the victims' profiles to the escort agency's website called "La Boutique VIP"—a website offering sexual services for sale throughout Mexico.

e. Although the victims had been initially told they would need to work for the co-conspirators for only a short time until their debts had been repaid, once the victims began to provide sex services, it became clear that they would be forced to work for the co-conspirators indefinitely. For example, M.E.V.C. was told that she owed the equivalent of $8,000 USD to the agency and that even if she paid off this debt, she would still need to provide sex services for three months.

---

[1] Y.C.B.C. was transported from the airport to the apartment by Yubisay Delimar Sandoval Sequera. However, her description of what happened thereafter mirrored the other victims'

4

        The victims were told that the proceeds of their sex work would be divided, with 60% being applied to the debt they owed the co-conspirators and 40% going to the "agency." Nevertheless, M.E.V.C. explained that she continued to incur debt even after she began working for the co-conspirators because she had to keep borrowing money for her personal expenses. Significantly, upon completing each sex service, the victims were required to relinquish the full money they had been paid to the co-conspirators. In many cases, Sandoval Sequera was responsible for collecting the victims' earnings, either via cash payments or deposits the victims made to a bank account in his name.

f. The volume and nature of the sexual services the women provided demonstrated the extreme sexual exploitation to which the victims were subjected. The victims' statements show that they performed numerous sex services across various cities throughout Mexico at an average hourly rate of 2,500 pesos (approximately 149 USD) per hour. The victims indicated that as part of the sex services, condoms were only used during vaginal intercourse. Otherwise, they were forced to please the client without a condom. One of the victims, D.A.H.M. kept a notebook detailing all the services she performed. Her notebook included the services she performed, amount she charged per service, and expenses she incurred for her taxi, hotels, or food. E.C.A.R. stated that she performed approximately 53 services between March 18 and May 19, 2020, but she only received 2,500 pesos

---

experiences.

every two weeks, which she sent to send to her mother in Venezuela.[2] The victims' statements make clear that they were receiving only a fraction of the amount they were charging to clients.

g. The victims' statements indicate that Sandoval Sequera played a key role in the victims' sexual exploitation. Sandoval Sequera regularly transported the victims to and from their sex work appointments in his car. Once the victims were finished with their appointments, they were forced to immediately hand over the money they earned directly to him or later deposit the money into his or his partner's, Arianny Vega's, respective bank accounts. In support of her testimony, Y.C.R.C. provided Mexican authorities with a bank receipt from a deposit she had been required to make following sexual services. Based on this information, Mexican authorities confirmed that one of the bank accounts to which the victims deposited their earnings was in Sandoval Sequera's name.

h. The victims initially identified the co-conspirators to investigators by showing them Facebook profiles the victims said belonged to the con-conspirators. On June 30, 2023, victim E.C.A.R. made signed statements to the Mexican authorities identifying two photographs of Sandoval Sequera. Law enforcement determined that the photographs of Sandoval Sequera depict the same person that is currently in the custody of U.S. Immigration and Customs Enforcement in Miami, Florida.

---

[2] The victims consistently explained that they were only paid the amount of one sex service, 2,500 pesos, every one or two weeks.

8. The offenses for which Sandoval Sequera's provisional arrest and extradition are sought are provided for in Article 2 of the Treaty.

9. Sandoval Sequera is expected to be found within the jurisdiction of this Court. Sandoval Sequera is currently detained at Krome North Service Processing Center, Miami, Florida, pending immigration removal from the United States.

10. The Government of Mexico has represented that it will submit a formal request for extradition supported by the documents specified in the Treaty within the time required under the Treaty.

WHEREFORE, the undersigned requests that a warrant for the arrest of the aforenamed person be issued in accordance with 18 U.S.C. § 3184 and the extradition treaty between the United States and Mexico.

Hayden P. O'Byrne
Assistant United States Attorney

Attested to me by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Face Time this __25th__ day of August 2023.

HONORABLE EDUARDO I. SANCHEZ
UNITED STATES MAGISTRATE JUDGE